## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

JILL SIKKELEE, Individually and    :
as Personal Representative of the    :
ESTATE OF DAVID SIKKELEE,    :    Case No. 4:07-cv-00886-MWB
Deceased,    :
   :    (The Honorable Matthew Brann)
    Plaintiff    :
   :
v.    :    Complaint Filed:
   :    May 16, 2017
PRECISION AIRMOTIVE    :
CORPORATION, et al.,    :
   :
    Defendants    :

## PLAINTIFF'S BRIEF IN OPPOSITION TO DEFENDANT AVCO CORP.'S ("LYCOMING'S") MOTION FOR SUMMARY JUDGMENT IN LIGHT OF *TINCHER V. OMEGA FLEX, INC.*

KATZMAN, LAMPERT & McCLUNE
David I. Katzman, Esq.
John D. McClune, Esq.
100 W. Big Beaver Road, Suite 130
Troy, MI  48084
Telephone: (248) 258-4800
Facsimile:  (248) 258-2825
dkatzman@klm-law.com
jmcclune@klm-law.com

RIEDERS, TRAVIS, HUMPHREY,
HARRIS, WATERS &
WAFFENSCHMIDT
Clifford A. Rieders, Esq.
161 West Third Street
P.O. Box 215
Williamsport, PA 17703-0215
Telephone: (570) 323-8711
Facsimile:  (570) 323-4192
lawoffices@riederstravis.com

*Attorneys for Plaintiff*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................. ii

BRIEF IN OPPOSITION................................................................1

I.    Background ...........................................................................2

  A.  Material Facts. .................................................................2

  B.  Relevant Procedural History.........................................4

  C.  The *Tincher* Decision. ...................................................8

II.   Legal Standard. ...............................................................10

III.  Argument ...........................................................................11

  A.  Lycoming's Current Motion Fails For The Same Reason As Its 2011 Summary Judgment Motion. ........................................11

  B.  To The Extent It Is Relevant, *Tincher* Undermines Lycoming's Argument. ..................................................................13

IV.  Conclusion ........................................................................20

# TABLE OF AUTHORITIES

## Cases

*Alm v. ALCOA*,
  717 S.W.2d 588 (Tex. 1986)......................................................................13

*Althaus v. Cohen*,
  756 A.2d 1166 (Pa. 2000) ................................................................. 6, 13

*D'Antona v. Hampton Grinding Wheel Co.*,
  310 A.2d 307 (Pa. Super. 1973)...............................................................19

*DeJesus v. Knight Indus. & Assocs., Inc.*,
  No. CV 10-07434, 2016 WL 4702113 (E.D. Pa. Sept. 8, 2016) ..........................13

*Denekamp v. Hetronic USA, Inc.*,
  No. CIV. 06-5025-KES, 2008 WL 4646954 (D.S.D. Oct. 17, 2008) .................13

*Eck v. Powermatic Houdaille*,
  527 A.2d 1012 (Pa. Super. 1987).............................................................19

*McLaud v. Indus. Res., Inc.*,
  No. 3:14-CV-00737, 2016 WL 7048987 (M.D. Pa. Dec. 5, 2016) .....................17

*Merriweather v. E.W. Bliss Co.*,
  636 F.2d 42 (3d Cir. 1980) ......................................................................19

*Pridgen v. Parker Hannifin Corp.*,
  905 A.2d 422 (Pa. 2006)................................................................. 11, 16

*Sweitzer v. Dempster Sys.*,
  539 A.2d 880 (Pa. Super. 1988)..............................................................19

*Taylor v. Gen. Motors, Inc.*,
  537 F. Supp. 949 (E.D. Ky 1982) .........................................................13

*Tincher v. Omega Flex, Inc.*,
  104 A.3d 328 (Pa. 2014).................................................................... passim

*Union Supply Co. v. Pust*,
  583 P.2d 276 (Colo. 1978).......................................................................12

*Walton v. Avco Corp.*,
  610 A.2d 454 (Pa. 1992).........................................................................17

## Regulations

14 C.F.R. § 21.3 ................................................................................................17

## Other Authorities

3A Summ. Pa. Jur. 2d Torts § 41:151 (2d ed.) .......................................13

63 Am. Jur. 2d Products Liability § 87 (2d ed.) .....................................12

FAA, Marvel-Schebler Models MA-3, MA3A, MA-3SPA, MA-4SPA, MA-4-5,
 MA-4-5AA and MA-6 Carburetors, 29 Fed. Reg. 16,317 (Dec. 4, 1964) ............2

Pennsylvania Civil Jury Instructions § 16.20 (4th ed. 2016 supp.) ........................17

Pennsylvania Civil Jury Instructions § 16.110 (4th ed. 2016 supp.) ......................15

Pennsylvania Civil Jury Instructions § 16.120 (4th ed. 2016 supp.) ......................19

Restatement (Second) of Torts § 402A(1) ................................................18

Restatement (Second) of Torts § 402A cmt. f .........................................15

Type Certificate Data Sheet No. IE12 (Rev. 9) ........................................2

**BRIEF IN OPPOSITION**

Lycoming's motion (ECF No. 523) argues that it cannot be held liable because it did not physically manufacture or sell the carburetor that caused the crash that killed David Sikkelee. Lycoming thus reprises arguments that this Court repeatedly rejected when it denied Lycoming's prior motion for summary judgment and two motions for reconsideration.

Lycoming argues that *Tincher v. Omega Flex, Inc.*, 104 A.3d 328 (Pa. 2014), changed the law so that its previously meritless arguments have now become winners. But *Tincher* was not even remotely about *who* may be liable under Pennsylvania law; it was about the standard for proving a claim of strict liability. To the extent *Tincher* speaks to Lycoming's argument at all, it only confirms that this Court's prior decisions were correct because it establishes that: (1) this Court was correct to hold that the Restatement (Second) applies in Pennsylvania; (2) the purpose of the tort of strict liability is to ensure that an entity in the business of selling a product (*e.g.*, Lycoming) bears the cost of defects in the product's design; and (3) the application of the common law of strict liability should be flexible to do justice in unusual cases, and should not confuse the summary descriptions in the Restatement (*e.g.*, an emphasis on sellers and manufacturers) for inflexible doctrine. Because *Tincher* does not provide any new basis for summary judgment, this Court should deny Lycoming's renewed motion.

## I.    Background

## A.    Material Facts.

None of the material facts have changed since Lycoming last sought summary judgment. Lycoming is in the business of designing and selling aircraft engines. One of these is the O-320-D2C engine. ECF No. 234-9, at 1. That engine design has multiple parts, including the MA-4SPA carburetor, originally designed by Marvel Schebler, but modified by Lycoming, and assigned a Lycoming part number (LW-13659). *Id*.; McSwain Affidavit, ECF No. 234-4, at 7; Sommer Affidavit, ECF No. 234-6, at 8. Specifically, Lycoming has specified that when the MA-4SPA carburetor is used on any O-320 engine, the screws attaching the throttle body to the float bowl shall be secured using lock tab washers. This method of securing the screws is by no means necessary to make the engine work. Indeed, it is not how these carburetors originally were designed (the original design called for the use of safety lock wire instead of lock tab washers), *see* FAA, Marvel-Schebler Models MA-3, MA3A, MA-3SPA, MA-4SPA, MA-4-5, MA-4-5AA and MA-6 Carburetors, 29 Fed. Reg. 16,317, 16,318 (Dec. 4, 1964); other variants of the O-320 engine use different carburetors, ECF No. 234-9, at 3; and still other variants use fuel injection instead of carburetion, Type Certificate Data Sheet No. IE12 (Rev. 9), *available at* http://tinyurl.com/znprn7s. But Lycoming adopted the current design in the 1960s, and only Lycoming, as holder of the type

certificate, has the power to change the design for carburetors used in the O-320 engine. ECF No. 234-6, at 14.

Lycoming has been aware for some time now that its design is defective. It received multiple notifications from the Federal Aviation Administration (FAA) in the 1970s that the screws attaching the throttle body to the bowl were loosening due to engine vibration, causing engines to produce less power or to lose power altogether. *See* ECF Nos. 234-8; 234-13. Lycoming also heard from its co-defendant Precision Airmotive that the throttle body to bowl screws would tend to loosen when O-320 engines were used in Cessna 172 series aircraft. *See* ECF No. 234-14, at 2-4 (letters to Rick Moffett at Lycoming); ECF No. 234-7, at 75, 86-87 (testimony of Moffett stating that he recalled receiving the November 2004 letter). But Lycoming did not modify its engine design. Instead, Lycoming published instructions, including its Service Bulletin (SB) 366, which mechanics servicing Lycoming engines were required to follow—even though the instructions never mentioned the defect, and failed to correct it. *See* ECF No. 234-10 (SB366); ECF No. 234-6, at 25-26 (Expert report of Mr. Sommer, P.E., explaining that "[t]he instructions set forth within [Lycoming's] service bulletins are inadequate and dangerous"); ECF No. 234-4, at 24-25 (Expert report of Dr. McSwain explaining that SB366 was inadequate); ECF No. 234-5, at 19-22 (Expert report of Mr. Twa explaining Lycoming's conflicting service instructions and their inadequacies).

In July 2005, David Sikkelee, the former husband of plaintiff Jill Sikkelee, died after a fiery plane crash. The engine in the Cessna 172N aircraft was a Lycoming O-320-D2C engine, manufactured and sold by Lycoming in 1969. The engine was first installed on a plane, in factory-new condition, in 1998. The replacement MA-4SPA carburetor on the engine when it crashed had been overhauled in 2004 by Kelly Aerospace pursuant to Lycoming's manuals and design specifications. The aircraft crashed shortly after takeoff following a loss of engine power caused by loose throttle body to bowl screws.  That loss of power led to a crash that killed David Sikkelee and seriously injured his passenger. David's widow sued.

## B.    Relevant Procedural History.

This is not the first time Lycoming has sought summary judgment on these same grounds. In fact, Lycoming filed a motion for summary judgment (ECF No. 220), followed by two motions for reconsideration (ECF Nos. 300, 360), making essentially the same arguments. This Court rejected Lycoming's argument each time.

In 2011, Lycoming filed a motion for summary judgment arguing that because it had not "manufactured, sold, and/or supplied the replacement carburetor parts," it was entitled to summary judgment. ECF No. 220, ¶ 9. After this Court determined that Pennsylvania law applies, Lycoming modified its position to argue

that Pennsylvania courts, applying either the Restatement (Third) of Torts, or the Restatement (Second) of Torts, would find that it could not be held liable. *See* ECF No. 295, at 5.

This Court granted in part and denied in part Lycoming's motion. In the process, it held that "the Restatement Second remains the law in Pennsylvania." ECF No. 299, at 22. The Court held that under Section 402A of that Restatement, Lycoming could be liable as a manufacturer and designer for defects in the carburetor in the subject aircraft. *See id*. at 16, 19, 24, 28. That was so because "the 2004 overhaul of the engine itself . . . was, in essence, a Lycoming-controlled remanufacture of the engine and its component parts." *Id*. at 15. Indeed, the Court held that:

> [I]t would entirely defy concepts of fairness and justice and run counter to the considered history of products liability policy to hold that a Type Certificate holder who exclusively controls the design and manufacture of replacement component parts and mandates the installation of said parts during an overhaul of its engine could escape liability for a defect in a component part simply because it is not physically involved in the manufacture and installation process.

*Id*. at 16-17.

Lycoming sought reconsideration, arguing that the Court had "misapplied Section 402A of the Restatement (Second) of Torts, which limits the class of defendants to those who sell or supply a defective product." ECF No. 300, ¶ 10. Separately, Lycoming sought an interlocutory appeal on the question whether the

Restatement (Second) or Restatement (Third) applies. The Third Circuit denied review but predicted that Pennsylvania courts would apply the Restatement (Third). Thus, Lycoming received the benefit of the more defendant-friendly standard, and it renewed its motion for reconsideration on that basis.

This Court denied that renewed motion, holding that "with respect to the caselaw that guides the extension of liability for product defects and inadequate warnings to particular parties, the application of §§ 1 & 2 of Restatement 3d instead of § 402A of Restatement 2d does not constitute an intervening change in controlling law warranting reconsideration" because under either standard, the facts in the summary judgment record reveal that Lycoming is responsible for the defects in its design under Pennsylvania law. ECF No. 359, at 16.

The Court further held that Lycoming's argument that it was not a "manufacturer" failed because the weight of authority from other jurisdictions (all applying § 402A) held that Lycoming could be held liable for its defective design, and also because "it is likely that the courts of Pennsylvania would conclude that Lycoming owed a duty of care to Sikkelee." *Id*. at 18. The Court applied the factors set forth in *Althaus v. Cohen*, 756 A.2d 1166, 1169 (Pa. 2000), and found that each and every one of them supports finding a duty here. Specifically: (1) the relationship between Lycoming and Sikkelee "was all but inevitable" in light of Lycoming's responsibility for and control over the design of the engine and

6

carburetor; (2) there was no social utility in allowing Lycoming to knowingly maintain a defective design; (3) the nature of the risk and the foreseeability of harm weighed in favor of imposing a duty because "potentially grievous injury is an undoubtedly foreseeable result of the malfunction of a necessary component in an airplane's engine"; (4) the burden of imposing a duty on Lycoming would not be great because it was already obligated under federal law to design safe products; and (5) "the overall public interest in the proposed solution weighs in favor of finding a duty" because "[f]orcing Lycoming to internalize the costs of [its] neglect may provide it with the incentive to provide a safer design to the public." ECF No. 359, at 25-27.

Lycoming was not done: it filed yet another motion for reconsideration, again arguing that it could not be held liable because it did not sell or supply the carburetor. This Court denied that motion too, noting that Lycoming had "arguably overstep[ed] the bounds of tactfulness," by filing it. ECF No. 363, at 2. The Court asked Lycoming to consider whether "contrary to all common knowledge, that a fourth bite at this apple will be sweeter than the first bitter three." *Id*. at 4.

Lycoming filed the instant motion on January 13, 2017. Lycoming argues that the Pennsylvania Supreme Court's intervening decision in *Tincher* changed the law by clarifying that Pennsylvania law only imposes a duty on the sellers and

suppliers of defective products, and not companies, like Lycoming, that design them.

## C.     The *Tincher* Decision.

After this Court granted partial summary judgment to Lycoming on unrelated federal law grounds, the case went up for interlocutory appeal. During the pendency of that appeal, the Pennsylvania Supreme Court decided *Tincher*. That case arose on very different facts: a natural gas line had punctured after being struck by lightning, causing a fire in a home. 104 A.3d at 336. The resident family sued the manufacturer of the tubing, alleging strict product liability, and prevailed. *Id*. at 340. On the manufacturer's appeal, the question presented was "[w]hether [the Pennsylvania Supreme Court] should replace the strict liability analysis of Section 402A of the Second Restatement with the analysis of the Third Restatement." *Id*. at 343.

The resulting opinion was an opus chronicling the history of strict products liability law in Pennsylvania, ultimately holding that "Pennsylvania remains a Second Restatement jurisdiction." *Id*. at 399. Along the way, however, the court made a few important clarifications.

First, it explained that the basic premise of strict liability is that "those who sell a product (*i.e.*, profit from making and putting a product in the stream of commerce) are held responsible for damage caused to a consumer by the

8

reasonable use of the product." *Id*. at 382. The objective is both to "streamline[]" access to compensation," *id*. at 401, and to improve product safety by deterring unsafe practices, *id*. at 404. "No product is expressly exempt and, as a result, the presumption is that strict liability may be available with respect to any product, provided that the evidence is sufficient to prove a defect." *Id*.; *id.* at 395-96 (explaining that the "public policy" is "that compensation is available for an injury caused by *any* type of defective product."). Thus, "[i]n Pennsylvania, those who make or market products have duties in strict liability (in addition to negligence)." *Id*. at 384. "[T]he question of 'special tort-insulated status' for certain suppliers . . . requires an assessment and balancing of policies best left to the General Assembly." *Id*. at 396 (quotation marks omitted).

Second, the court explained that courts seeking to apply the Restatement (Second) of Torts should not act as if they are parsing and interpreting a statute, because the words of a Restatement "are not entitled to the fidelity due a legislative body's expression of policy, whose judgment and intent, wise or unwise, a court generally is obligated to effectuate, absent constitutional infirmity." *Id*. at 399-400. Instead, the words of the Restatement provide "a pithy articulation of a principle of law which, in many cases, including novel or difficult ones, represents a starting template for members of the judiciary, whose duty is then to employ an educated,

candid, and common-sense approach to ensure dispensation of justice to the citizenry." *Id*. at 400. "This is the essence of justice at common law." *Id*.

Third, the court held that strict liability can be proved using either of two tests. *See id*. The first is the "consumer expectation" test, which holds that "the product is in a defective condition if the danger is unknowable and unacceptable to the average or ordinary consumer." *Id*. at 387. The second is the "risk-utility" test, which holds that "a product is in a defective condition if a 'reasonable person' would conclude that the probability and seriousness of harm caused by the product outweigh the burden or costs of taking precautions." *Id*. at 389.

## II.   Legal Standard.

Although styled as a renewed motion for summary judgment, Lycoming's motion ought to be regarded under the standard applicable to a motion for reconsideration. Lycoming previously moved for summary judgment on exactly these grounds. Summary judgment practice closed years ago, and Lycoming's stated justification for another motion is an intervening change in the law. That ordinarily would be grounds to reconsider—and this Court should hold Lycoming's motion to the same high standard of proving clear error. In any event, regardless of the standard, Lycoming's motion fails because it misconstrued *Tincher* and cannot show that there are no disputed issues of material fact.

### III.   Argument

### A.   Lycoming's Current Motion Fails For The Same Reason As Its 2011 Summary Judgment Motion.

In 2011, Lycoming unsuccessfully argued that it should prevail under § 402A of the Restatement (Second) of Torts. Lycoming now seeks to revive these arguments based on *Tincher*—but *Tincher* was not about *who* can be held liable in a strict liability action, but instead about the standard courts should apply, and the division of labor between the court and the jury in such cases. Thus, the only thing that has changed since Lycoming's last reconsideration motion was denied is that the Pennsylvania Supreme Court confirmed that this Court was correct to apply the Restatement (Second)—a standard that is less favorable to Lycoming than the Restatement (Third), and under which Lycoming's 2011 motion already failed. Lycoming's renewed motion ought to fail for the same reasons.

Specifically, this Court originally held that in light of the role Lycoming played in causing the replacement carburetor to be produced according to its design, Lycoming could be liable as the de facto manufacturer of the overhauled engine. ECF No. 299, at 15. That holding was consistent with the Federal Aviation Administration's definition of a "manufacturer," which is "[a] person who causes a product or part thereof to be produced." FAA Order 8130.2F, at 5. It is also consistent with the Pennsylvania Supreme Court's statement in *Pridgen v. Parker Hannifin Corp.*, 905 A.2d 422, 436 (Pa. 2006), that "the status of type certificate

11

holder and/or designer fall under the umbrella of manufacturer conduct for purposes of GARA." The Colorado Supreme Court has similarly held that designers can be liable as manufacturers because design is a part of the manufacturing process. *See Union Supply Co. v. Pust*, 583 P.2d 276, 281 (Colo. 1978). And commentators have recognized that a company like Lycoming, "which exercises strict control over the design and testing of a product, even though the product is not manufactured by the company, may be held strictly liable" because "such a company is an integral part of the composite business enterprise responsible for placing the product in the stream of commerce." 63 Am. Jur. 2d Products Liability § 87 (2d ed.). A letter from the FAA shows that Lycoming, as holder of the engine type certificate, was required to resolve service issues related to design. *See* ECF No. 234-13.   In this case, then, there is at least a material question of fact as to whether Lycoming caused the replacement carburetor to be manufactured in a defective manner by adhering to its flawed design, and therefore whether Lycoming is a manufacturer of the engine, including its replacement carburetor.

Second, as this Court noted in denying Lycoming's motion for reconsideration, even if Lycoming is not deemed a manufacturer, cases from other jurisdictions have held product designers strictly liable when, as here, those designers are also in the business of selling the product. *See* ECF No. 359, at 19-21 (citing *Denekamp v.*

*Hetronic USA, Inc.*, No. CIV. 06-5025-KES, 2008 WL 4646954, at *3 (D.S.D. Oct. 17, 2008); *Alm v. ALCOA*, 717 S.W.2d 588, 591 (Tex. 1986); *Taylor v. Gen. Motors, Inc.*, 537 F. Supp. 949 (E.D. Ky 1982)).[1] These cases are consistent with the authorities cited in the previous paragraph, and also accord with the public policy underlying strict liability, which seeks to shift costs away from consumers and onto those in the business of selling products.

Third, this Court held that Sikkelee's negligence claim is viable under the *Althaus* test for determining a duty—which clearly survived *Tincher* (a case that did not address negligence at all). *See DeJesus v. Knight Indus. & Assocs., Inc.*, CV 10-07434, 2016 WL 4702113, at *12-13 (E.D. Pa. Sept. 8, 2016) (applying *Althaus*). Commentators have confirmed the correctness of this determination, explaining that in Pennsylvania "[a] duty of care extends to designers of a product which have no part in the actual manufacture of that product." 3A Summ. Pa. Jur. 2d Torts § 41:151 (2d ed.).

### B.     To The Extent It Is Relevant, *Tincher* Undermines Lycoming's Argument.

To the extent *Tincher*'s discussion about the contours of strict liability is relevant, it only undermines Lycoming's argument for summary judgment. As

---

[1] The Court also cited cases holding that non-sellers were not liable, but in those cases, the sellers were no longer in the business of selling the particular products at issue, and this Court acknowledged that the cases were therefore distinguishable.

*Tincher* explained, courts should strive in any given case to achieve the purposes underlying strict liability, *i.e.*, to streamline access to compensation and promote deterrence by shifting the cost of injury away from consumers and toward those in the business of placing products into the stream of commerce. It is undisputed that Lycoming is in the business of manufacturing and selling aircraft engines requiring this carburetor. It is beyond dispute that Lycoming is better able to bear the cost of a plane crash than a pilot, his widow, and his minor children. And Lycoming is the *only* entity capable of ensuring the safety of its designs because it is the only entity that has the power to change them. Recognizing liability for Lycoming thus fulfills all of the purposes of strict liability. *See, e.g.*, ECF No. 299, at 18 (noting that "the public policy rationales which support products liability causes of action" undermine "Lycoming's argument and highlight[] our conclusion that an injustice would be accomplished by allowing a company such as Lycoming to exercise so much control over the manufacturing process while at the same time immunizing itself from liability for defects resulting from its process").

On the other hand, *Tincher* warned against taking "words or phrases or sentences" of the Restatement and treating them "as doctrines" instead of guideposts. 104 A.3d at 355. But Lycoming's objection that it is not a "manufacturer, seller, or supplier" of the carburetor in this case constitutes precisely that sort of wooden parsing. First, it is at odds with the FAA's own

14

definition of a "manufacturer." *See supra.* Second, even if Lycoming did not physically put together the replacement carburetor in this case, the *Tincher* court's understanding of the tort supports treating it as a manufacturer anyway. *Tincher* teaches that strict liability is intended to reach "those who engage in the business of selling a product." *Id.* at 383. The Restatement's focus on "manufacturers" and "sellers" seeks to distinguish between those frequent participants in the supply chain who reasonably should expect to be liable for a product's defects versus "the occasional seller of food or other such products who is not engaged in that activity as a part of his business." Restatement (Second) § 402A cmt. f; *see also* Pennsylvania Civil Jury Instructions § 16.110 (4th ed. 2016 supp.) (distinguishing between those are "in the business of supplying the products that are the basis for liability," and "occasional seller[s]"). But the Restatement's use of the word "seller" is not designed to exonerate an entity, like Lycoming, that is in the business of selling a product, that originally manufactured the product, and then maintained control over the design, merely because of the happenstance that somebody else might service a Lycoming engine by replacing a part—especially when, as here, that replacement was done according to Lycoming's instructions, and the only reason the third party was allowed to manufacture a replacement part is because its parts are identical to Lycoming's design. ECF No. 234-6, at 4 (Sommer report). This argument also ignores the fact that Lycoming itself created

and circulated defective service instructions—a separate basis for liability in this case.[2]

To put it another way, by focusing on the fact that Triad and Kelly serviced the engine it manufactured, Lycoming implicitly admits that if *it* had overhauled the carburetor (which it frequently does), it would have no defense. Indeed, Lycoming has been held liable, in Pennsylvania state court, for injuries arising out of crashes resulting from loose throttle body to bowl screws. *See* ECF No. 409-6 (2010 jury verdict sheet from *Pridgen v. AVCO Corp.*, finding Lycoming's carburetor design defective, further finding that Lycoming had concealed the defect, and awarding $88.7 million in compensatory and punitive damages). Lycoming cannot identify any reason under the law of strict liability, or especially the reasoning of *Tincher*, why that fact pattern should produce a different result than this one. Lycoming does not argue, for example, that Kelly failed to follow its instructions or design specifications. Because one of the purposes of strict liability is to ensure that consumers are compensated for product defects regardless of intermediate steps in

---

[2] In a response to a motion for summary judgment in *MCC v. Precision Airmotive et al.*, No. 3:12-cv-00853-L, ECF No. 33, at 7-8 (N.D. Tex.), Lycoming argued that because a carburetor "overhaul was performed according to Precision-issued service manuals," and Precision's service bulletins, and because Precision was responsible for reporting defects with the products, that "alone is sufficient to establish an issue of fact regarding Precision's independent liability regarding the carburetor and the component parts installed during the 1996 overhaul." The same logic applies will full force to Lycoming here.

the supply chain, the fact that Kelly touched this particular carburetor cannot matter.[3]

*Tincher* also clarified that liability can attach under either the consumer expectations or risk-utility test. Under either test, it makes sense to hold Lycoming accountable for defects in its design because it has the most information about the design, as well as the power to cure any defects.[4] The new Pennsylvania civil jury instructions, which account for *Tincher*, thus provide that a defendant can be liable under either of these tests if it "[designed] [manufactured] [distributed] [sold] the product." Pennsylvania Civil Jury Instructions § 16.20 (4th ed. 2016 supp.). By stating these bases for liability in the alternative, the instructions clarify that there are circumstances in which designers may be strictly liable even if they do not also manufacture, distribute, or sell the product.[5]

---

[3] Accepting Lycoming's argument would invite manufacturers to further undermine the policy rationale of strict liability by making even finer distinctions. Even if Lycoming had assembled the carburetor, for example, it could argue that because it did not manufacture the four screws that hold the throttle body and the bowl together, or the lock tab washers that were supposed to secure them in place, it cannot be held liable as a manufacturer if a defect is attributable to those parts. But liability for manufacturers has never turned on whether they personally created each and every component of their products.

[4] As the type certificate holder, Lycoming also has an ongoing duty to report design defects. *See* 14 C.F.R. § 21.3. *See also Walton v. Avco Corp.,* 610 A.2d 454, 458 (Pa. 1992).

[5] The sole post-*Tincher* case Lycoming cites, *McLaud v. Industrial Resources, Inc.*, No. 3:14-CV-00737, 2016 WL 7048987 (M.D. Pa. Dec. 5, 2016), bears no

To the extent the Court accepts Lycoming's invitation to reconsider past summary judgment holdings in light of *Tincher*, the Pennsylvania Supreme Court's decision supports Sikkelee for yet another reason. The court explained that going forward, the non-delegable duty of strict liability is as follows:

> [A] person or entity engaged in the business of selling a product has a duty to make and/or market the product—which "is expected to and does reach the user or consumer without substantial change in the condition in which it is sold"—free from "a defective condition unreasonably dangerous to the consumer or [the consumer's] property."

104 A.3d at 383 (quoting Restatement (Second) § 402A(1)). Under this language, Lycoming has a duty (or at least, it cannot disprove that it has a duty as a matter of law). After all, Lycoming is in the business of selling the O-320 engine. It manufactured and sold the subject engine incorporating a flawed design whereby lock tab washers were used to secure the throttle body to the float bowl in the MA-4SPA carburetor. When the engine left Lycoming's possession, it was therefore defective. The engine was in substantially the same condition on the day of the crash because the only change is that certain parts had been replaced with newer, identical parts over time. Because those changes were clearly foreseeable by

---

resemblance to this one because the defendant was not a designer of the defective product (a roller machine used on an assembly line). Instead, it was the owner of the assembly line itself and the plaintiff's employer.

Lycoming,[6] they do not diminish its liability. *See Sweitzer v. Dempster Sys.*, 539 A.2d 880, 882 (Pa. Super. 1988) ("[I]f the manufacturer is to effectively act as the guarantor of his product's safety, then he should be held responsible for all dangers which result from foreseeable modifications of that product.") (quoting *Eck v. Powermatic Houdaille*, 527 A.2d 1012, 1018 (Pa. Super. 1987)); *D'Antona v. Hampton Grinding Wheel Co.*, 310 A.2d 307, 310 (Pa. Super. 1973); *Merriweather v. E.W. Bliss Co.*, 636 F.2d 42, 45 (3d Cir. 1980); *see also* Pennsylvania Civil Jury Instructions § 16.120 (4th ed. 2016 supp.) (providing that a defendant can only escape liability based on a subsequent alteration to the product if "the alteration was so extraordinary that it was not reasonably foreseeable to [*name of defendant*], and therefore was the only factual cause of [*name of plaintiff*]'s harm"). Thus, under *Tincher*, Lycoming has a strict liability duty by virtue of its status as the original manufacturer of the engine, which it violated by selling a defective product.

---

[6] *See* ECF No. 234-6, at 9, 14-15 (Sommer affidavit explaining that replacement of components is commonplace).

## IV.    Conclusion

Lycoming's renewed motion for summary judgment should be denied.

Respectfully submitted this 17th day of February, 2017.

                KATZMAN, LAMPERT & MCCLUNE

                */s/   John D. McClune*
                David I. Katzman, pro hac vice (MI 39886)
                John D. McClune, pro hac vice (MI 51948)
                100 W. Big Beaver Road, Suite 130
                Troy, Michigan 48084
                Telephone: (248) 258-4800
                Facsimile:  (248) 258-2825
                dkatzman@klm-law.com
                jmcclune@klm-law.com

                and

                RIEDERS, TRAVIS, HUMPHREY, HARRIS,
                WATERS & WAFFENSCHMIDT
                Clifford A. Rieders, Esq.
                161 West Third Street
                P.O. Box 215
                Williamsport, PA 17703-0215
                Telephone: (570) 323-8711
                Facsimile:  (570) 323-4192
                lawoffices@rierderstravis.com

                *Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on this 17th day of February, 2017, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send a notification of such filing to the all CM/ECF participants.

*/s/   John D. McClune*
David I. Katzman, pro hac vice (MI 39886)
John D. McClune, pro hac vice (MI 51948)
100 W. Big Beaver Road, Suite 130
Troy, Michigan 48084
Telephone: (248) 258-4800
Facsimile:  (248) 258-2825
dkatzman@klm-law.com
jmcclune@klm-law.com

## CERTIFICATE OF COMPLIANCE

Pursuant to M.D. Pa. Local Rule 7.8(b), according to Microsoft Word's word count tool, the total words in this brief (not including table of contents, table of authorities, and signature blocks) totals 4,625 words.

KATZMAN, LAMPERT & MCCLUNE

*/s/   John D. McClune*
David I. Katzman, pro hac vice (MI 39886)
John D. McClune, pro hac vice (MI 51948)
100 W. Big Beaver Road, Suite 130
Troy, Michigan 48084
Telephone: (248) 258-4800
Facsimile:  (248) 258-2825
dkatzman@klm-law.com
jmcclune@klm-law.com